UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALPHONSO SYVILLE,<br><br>                              Plaintiff,<br><br>              -against-<br><br>CITY OF NEW YORK, *et al.*,<br><br>                              Defendants. | 19cv9988 (VEC) (DF)<br><br>**ORDER FOR<br>LIMITED APPEARANCE<br>*PRO BONO* COUNSEL** |

**DEBRA FREEMAN, United States Magistrate Judge:**

On May 4, 2020, this Court held a telephonic case management conference in this Section 1983 case, during which *pro se* plaintiff Alphonso Syville ("Plaintiff") made an oral application for the Court to request *pro bono* counsel to represent him in the action.  For the reasons set forth below, Plaintiff's application is granted to the extent that this Court directs the Clerk of Court to seek *pro bono* counsel to enter a limited appearance on Plaintiff's behalf, for the specific purposes of (1) representing Plaintiff in connection with the remaining discovery in this action, and (2) assisting Plaintiff in negotiating a potential settlement.  Counsel will file a Notice of Limited Appearance as *Pro Bono* Counsel.

## BACKGROUND

Plaintiff is homeless and has been residing in New York City shelters.  He claims that he suffers from a physical disability related to a prior back injury, as well mental health issues, which he described at the May 4 conference as depression, anxiety, and PTSD.  According to his Second Amended Complaint (Dkt. 17), the incident that gave rise to Plaintiff's claim occurred in July 2019, when he was transferred from the shelter where he previously had been living to the Jack Ryan Homeless Shelter ("the Ryan Shelter"), specifically because it was closer to Bellevue Hospital, where he was scheduled to have lower back surgery (*see id.* (Statement of Facts)).

Plaintiff alleges that, when he was transferred to the Ryan Shelter, all of his belongings were transported with him, and personnel at the Ryan Shelter were notified ahead of time that, because of his back injury, he would need assistance with his property when it arrived.  (*Id*.)  Despite this, Plaintiff claims that, upon his arrival to the Ryan Shelter, he was refused assistance in lifting his belongings onto a metal detector to be searched, and when he would not lift the items himself, he was denied entry to the shelter.  (*See id.*)

The situation apparently escalated, and Plaintiff claims that he was assaulted by a group of special officers of the Department of Social Services, named (together with the City of New York) as Defendants in this case.  Plaintiff alleges that one officer put him in a "bear hug," that another then put him in a "headlock [and] took [him] down to the floor," and that others "cuffed [his] arms and ankles."  (*Id*.)  He further alleges that the first officer then "lifted [him] up by his dreads" (pulling out several), and that officers "banged [his] head off the wall as they dragged [him] down [approximately] 15 steps."  (*Id*.)  He also claims that one of the officers lied about what had occurred and "advised some of the Defendants to make false statements."  (*Id*.)  Plaintiff additionally claims that Defendants "threw all [his] property away, [his] whole life." (*Id*.)  Aside from the loss of his property, he contends that he suffered trauma from the incident, including physical scarring from the hand and ankle cuffs, loss of hair, and an aggravation of his previously existing back injury.  (*See id.* (Injuries).)

The use of force that forms the basis of Plaintiff's claims was, at least to some extent, captured by a video surveillance camera, and the video has been produced in discovery by Defendants.  Plaintiff, however, has reportedly had difficulty complying with Defendants' discovery requests.  He informed the Court at the May 4 conference that he does have a phone and access to email, but he has no money, no current ability to mail documents (such as signed

authorization forms for the release of his medical records) to Defendants' counsel, and limited

ability, at this time, to prosecute this case.  He also expressed concern that the shelter where he is

currently residing is unsafe, in light of the COVID-19 outbreak.

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARD

Unlike in criminal cases, there is no requirement in civil cases that courts provide

indigent litigants with counsel.  *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

Instead, a court has "broad discretion" when deciding whether to seek *pro bono* representation

for a civil litigant.  *Id.*  Although a court may not simply "appoint" counsel to represent an

indigent party, it may, under 28 U.S.C. § 1915(e)(1), request an attorney to represent any person

unable to afford counsel, *see Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296,

301-10 (1989).  As courts do not have funds to pay counsel in civil matters, the services of

*pro bono* counsel should not be sought in every case, but rather should be requested with care.

*See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In order to warrant a court's request for *pro bono* counsel, the litigant must, of course,

demonstrate that he or she is indigent, by, for example, successfully applying for leave to

proceed *in forma pauperis*.  Assuming indigence is shown, the court must then turn to the

question of "whether the indigent's position seems likely to be of substance."  *Hendricks v.*

*Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (quoting *Hodge*, 802 F.2d at 61-62).  In order to

make such a determination, the Court must decide whether, "from the face of the pleading[s],"

*Stewart v. McMickens*, 677 F. Supp. 226, 228 (S.D.N.Y. 1988), the claims asserted by the

plaintiff "may have merit," or the plaintiff "appears to have some chance of success."  *Cruz v.*

*Smith*, No. 05 Civ. 10703 (LTS) (DF), 2007 WL 80865, at *1 (S.D.N.Y. Jan. 10, 2007) (quoting

*Baskerville v. Goord*, No. 97 Civ. 6413 (BSJ) (KNF), 2001 WL 527479, at *1 (S.D.N.Y. May 16,

2001) (internal quotation marks and citations omitted)); *see also Hodge*, 802 F.2d at 60-61.
While a court should not appoint counsel "indiscriminately" just because an indigent litigant
makes such a request, it is not necessary for the plaintiff to demonstrate that his or her claims
will survive a motion to dismiss or a motion for summary judgment; rather, the court must only
find that the claims satisfy a "threshold showing of some likelihood of merit." *Hendricks*, 114
F.3d at 391.

Where a plaintiff satisfies the threshold requirement of demonstrating that his or her
position is likely to be of substance, the court should then consider factors such as: (1) the
plaintiff's ability to investigate the crucial facts; (2) whether conflicting evidence implicating the
need for cross-examination will be the major proof presented to the fact-finder; (3) the plaintiff's
ability to present the case; (4) the complexity of the legal issues; and (5) any special reason in the
case why appointment of counsel would be more likely to lead to a just determination. *See
Hodge*, 802 F.2d at 61-62; *see also Hendricks*, 114 F.3d at 394-95. The court should also
consider whether the plaintiff has attempted to obtain a lawyer, and whether a lawyer is already
available to assist the plaintiff. *See Cooper*, 877 F.2d at 172.

## II.   **PLAINTIFF'S APPLICATION**

In this case, the Court has already granted Plaintiff leave to proceed *in forma pauperis*
(*see* Dkt. 4), and, accordingly, Plaintiff need not make any further showing that he is indigent
and cannot afford counsel.

As for whether Plaintiff has made the necessary threshold showing of merit, this Court
notes that, if the evidence supports the factual allegations described above, Plaintiff could have
meritorious claims that Defendants used excessive force against him and unlawfully deprived
him of his property. Thus, regardless of whether Plaintiff's claims will ultimately be successful,

this Court finds that, for purposes of his counsel application, Plaintiff has adequately shown,
from the face of his pleading, that his claims are "likely to be of substance." *Hodge*, 802 F.2d
61-62.

In addition, this Court finds that the majority of the other factors set out in *Hodge* also
weigh in favor of granting Plaintiff's application at this time. While the case involves a single
incident and the legal principles at issue are relatively straightforward, Plaintiff's ability to
investigate the facts of his case through discovery are significantly limited by his lack of
resources and current housing situation; his allegation that one or more of the officers may have
lied about the incident suggests that conflicting evidence implicating the need for cross-
examination may be critical; restrictions resulting from the COVID-19 outbreak have diminished
his ability to present his case to the Court; and his physical and mental health conditions create
additional special circumstances that affect his ability to prosecute his case effectively. Finally,
while it is unclear whether Plaintiff has made efforts on his own to find a lawyer to represent
him, this Court notes that, with many law offices in New York City operating remotely during
the current pandemic, it will likely be more difficult, at this time, for Plaintiff to locate *pro bono*
counsel without assistance.

For all of these reasons, this Court is persuaded that, for a just determination to be
reached in this action, it would be reasonable and appropriate to afford Plaintiff the benefit of
*pro bono* counsel.

Given that these proceedings are in the discovery stage, this Court will request that
*pro bono* counsel appear for the limited purposes of: (1) representing Plaintiff for the remainder
of the discovery period (currently scheduled to be completed by September 11, 2020), and
(2) advising Plaintiff as to the value of his claims for settlement purposes and engaging in

settlement negotiations with Defendants' counsel, who have expressed an interest in attempting to resolve the matter.

Under the Court's Standing Order regarding the Creation and Administration of the *Pro Bono* Fund (16-MC-0078), *pro bono* counsel may apply to the Court for reimbursement of certain out-of-pocket expenses spent in furtherance of Plaintiff's case. The *Pro Bono* Fund is especially intended for attorneys for whom *pro bono* service is a financial hardship. *See* http://www.nysd.circ2.dcn/docs/prose/pro_bono_fund_order.pdf.

Although nothing herein is intended to prevent *pro bono* counsel from seeking to expand the scope of his or her representation of Plaintiff, counsel shall not be obligated for any aspect of Plaintiff's representation beyond the completion of discovery, as described above. In particular, *pro bono* counsel shall not be required or expected to respond to a dispositive motion. In the event that Defendants file a dispositive motion, *pro bono* counsel may seek appropriate relief, including an extension of Plaintiff's time to respond or an expansion of *pro bono* counsel's role to include responding to the motion. Absent the Court's granting of an application to expand representation, *pro bono* counsel's representation of Plaintiff will terminate upon completion of discovery and the filing by *pro bono* counsel of a Notice of Completion. After that, *pro bono* counsel will have no further obligations or responsibilities to Plaintiff or to the Court in this matter.

## CONCLUSION

For the foregoing reasons, the Clerk of Court is directed to attempt to locate *pro bono* counsel to represent Plaintiff for the limited purposes described above. The Court advises Plaintiff that there are no funds to retain counsel in civil cases and the Court relies on volunteers. Due to a scarcity of volunteer attorneys, a lengthy period of time may pass before counsel volunteers to represent Plaintiff. If an attorney volunteers, the attorney will contact Plaintiff

directly.  There is no guarantee, however, that a volunteer attorney will decide to take the case, and Plaintiff should be prepared to proceed with the case without an attorney.

If Plaintiff, proceeding *pro se*, wishes to file papers with the Court and is unable to mail them to the Court's *Pro Se* Office or to deposit them in the drop box located in the lobby of the U.S. Courthouse at 500 Pearl Street, New York, New York, then, until further notice, he should submit his filings by email to Temporary_Pro_Se_Filing@nysd.uscourts.gov.  For more information regarding this new email service for *pro se* parties, which has been established to assist *pro se* parties during the period of the COVID-19 outbreak, Plaintiff should visit the Court's website at https://www.nysd.uscourts.gov/prose.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Defendants are directed to serve a copy of this Order on Plaintiff by email, and to file proof of such service on the Docket of this action.

Dated:  New York, New York
          May 8, 2020

                                        SO ORDERED

                                        DEBRA FREEMAN
                                        United States Magistrate Judge